## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **HEATHER E., PAUL E., and L. E.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CALIFORNIA PHYSICIANS'<br>SERRVICES d/b/a BLUE SHIELD OF<br>CALIFORNIA,**<br><br>**Defendants.** | **MEMORANDUM DECISION<br>AND ORDER DENYING<br>MOTION TO DISMISS**<br><br><br>**Case No.  2:19-cv-415**<br><br>**Judge Clark Waddoups** |

Before the court is Defendant California Physicians' Service d/b/a Blue Shield of California's ("Blue Shield") motion to dismiss (ECF No. 15), which seeks to dismiss the second cause of action asserted in Plaintiffs' Second Amended Complaint (ECF No. 12).  The motion has been fully briefed, and the court heard argument on the same at a hearing held on June 25, 2020.  For the reasons stated herein, Blue Shield's motion is **DENIED**.

## BACKGROUND

L. is the minor child of Plaintiffs Heather E. and Paul E.  (Second Amended Compl., ECF No. 12 at ¶ 1).  As L. entered high school, he struggled with anxiety and depression and attempted suicide.  (*Id*. at ¶¶ 9–11).  L. underwent various forms of treatment but continued to struggle to remain in school or complete his alternative school programs.  (*Id*. at ¶¶ 9–15).  Heather and Paul enrolled L. in Aspiro, an outdoor behavioral health program in Utah, where he stayed, and made progress, for twelve weeks.  (*Id*. at ¶ 16).  L. then transferred to Northwest Academy, a facility that provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems, where he received medical care and treatment from

June 17, 2016 through January 12, 2019.  (*Id*. at ¶¶ 4, 16).  Blue Shield was the insurer and claims administrator for the insurance plan that provided coverage for Heather and L (the "Plan").  (*Id*. at ¶ 2). Blue Shield denied coverage for L.'s treatment at Northwest on the basis that the treatment "was not medically necessary."  (*Id*. at ¶¶ 5, 18).

Plaintiffs appealed the denial, arguing that Blue Shield's rationale was "overly vague" and "fell short of the requirements of ERISA," and contending that the services rendered at Northwest were "appropriate and consistent with L.'s symptoms and diagnoses."  (*Id*. at ¶¶ 19–21).  Blue Shield upheld the denial, stating that "the medical necessity of treatment at a residential level of care was not established" and that L. did not meet the governing "guidelines for treatment at a residential program" since his mental condition "has not caused significant impairment that cannot be managed now at a lower level of care."  (*Id*. at ¶¶ 22–23).  Plaintiffs then requested that the denial be evaluated by an external review agency, arguing, among other things, that "requiring acute symptomology for treatment at a non-acute level of care was not consistent with generally accepted industry standards."  (*Id*. at ¶¶ 24–28).  On June 1, 2018, the external review agency upheld the denial, finding that "[t]he submitted documentation fails to demonstrate the medical necessity of the services at issue," as L. "did not have any suicidal or homicidal ideation" and was not "was an imminent threat to himself or to others" and thus "did not require 24 hour supervision by 6/17/16" and "could have been treated in a . . . less restrictive environment when compared to residential treatment centers."  (*Id*. at ¶ 29).  As a result of Blue Shield's denial, Plaintiffs incurred medical expenses of approximately $146,000.  (*Id*. at ¶ 31).

Plaintiffs initiated this action by Complaint filed on June 6, 2019 (ECF No. 2).  Plaintiffs thereafter filed an Amended Complaint on August 16, 2019, (ECF No. 3), and, after seeking leave of court, filed a Second Amended Complaint on September 25, 2019, asserting two causes

of action: first, that Blue Shield's denial constituted a breach of its fiduciary duties to L and a violation of ERISA and second, that Blue Shield violated the Parity Act by applying medical necessity criteria to intermediate level mental health treatment benefits that are more stringent or restrictive than the criteria applied to intermediate level medical or surgical benefits and by failing to provide Plaintiff with requested Plan Documents (the "Parity Act Claim"). On November 1, 2019, Blue Shield filed a Motion to Dismiss (ECF No. 15) asking the court to dismiss Plaintiffs' Parity Act Claim on the basis that it 1) fails to state a claim, 2) is duplicative of Plaintiffs' first cause of action, and 3) is based on conclusory allegations that are insufficient to proceed past the pleading stage.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In assessing Blue Shield's motion, this court must "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

**I.     Plaintiffs' Parity Act Claim asserts sufficient facts that, when accepted as true, show it is plausible that Blue Shield has violated the Parity Act.**

Blue Shield asserts that Plaintiffs' Parity Act Claim is fundamentally flawed, and must be dismissed, because compliance with the Parity Act "requires that the *underlying processes and*

*standards* used in *developing* the guidelines be *comparable* between mental health benefits and analogous medical or surgical benefits—not that the actual clinical guidelines be the same or even comparable in both settings."  (ECF No. 15 at 10–17 (emphasis in original)).  The court disagrees that the Parity Act's application is this narrow.

"[T]he Parity Act is designed 'to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans.'"  *Candace B. v. Blue Cross*, No. 2:19-cv-39, 2020 WL 1474919, at *4 (D. Utah Mar. 25, 2020) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).  As such, and contrary to Blue Shield's argument that the Parity Act is only concerned with the underlying processes and standards that an insurer uses to develop its guidelines, courts in this district have recognized that under the Parity Act "a health plan that provides medical and surgical benefits as well as mental health or substance abuse benefits cannot 'impose more restrictions on the latter than it imposes on the former.'"  *Id*. (quoting *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1233 (D. Utah Sept. 27, 2019)).  One key category of such restrictions, and that which is relevant here, is "treatment limitations," which includes "both quantitative treatment limitations, which are expressed numerically . . . and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage."  *See* 29 C.F.R. § 2590.712(a).

Here, Plaintiffs' Parity Act Claim alleges that Blue Shield has adopted and/or asserted nonquantitative treatment limitations that violate the Parity Act.  Under the Parity Act, "[a] group health plan . . . may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan .

4

. . as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification."  29 C.F.R. § 2590.712(c)(4)(i).  In short, "an insurer violates the Parity Act if it employs 'a nonquantitative limitation for mental health treatment that is more restrictive than the nonquantitative limitation applied to medical health treatments.'"  *Candace B*., 2020 WL 1474919, at *4 (quoting *David S. v. United Healthcare Ins. Co.*, No. 2:18-cv-803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019)).

Because the Tenth Circuit has not yet "promulgated a test to determine what is required to state a claim for a Parity Act violation . . . this court has adopted a three-part analysis."  *Nancy S. v. Anthem Blue Cross & Blue Shield*, No. 2:19-cv-231, 2020 WL 2736023, at *3 (D. Utah May 26, 2020) (citations omitted).  Under this test, a plaintiff asserting a violation of the Parity Act must "(1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog."  *Id.* (internal quotations and citations omitted).  Plaintiffs have adequately pled each of these elements in their Second Amended Complaint.

First, Plaintiffs assert that Blue Shield implemented an improper treatment limitation on mental health benefits by requiring L. to satisfy acute care medical necessity criteria to obtain

5

coverage for residential treatment.  (ECF No. 12 at ¶¶ 24, 43).  Specifically, Plaintiffs allege that Blue Shield "evaluated the medical necessity of L.'s treatment based on acute rather than sub-acute residential treatment criteria," as they allege is shown in Blue Shield's denial letter, which states that L.'s claim was denied because he "was not a serious or imminent danger to himself or others," "was not experiencing ongoing self-harm, aggression, psychosis, drug withdrawal or severe impairment in activities of daily living." "did not have suicidal or homicidal ideation," and "was not manic, hallucinatory, or delusional."  (*Id*. at ¶ 44).

Second, Plaintiffs allege that Blue Shield offers benefits for medical/surgical treatment that are analogous to the benefits it excluded for L.'s treatment in the form of "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities."  (*Id*. at ¶ 42).

Finally, Plaintiffs allege a disparity between the treatment limitation Blue Shield applied to L.'s mental health treatment and limitations that it applies to analogous skilled nursing facilities, inpatient hospice care, and rehabilitation facilities, asserting that Blue Shield "does not require individuals receiving treatment at sub-acute inpatient facilities for medical or surgical conditions to satisfy acute medical necessity criteria in order to receive benefits."  (*Id*. at ¶ 43).

Plaintiffs' Second Amended Complaint therefore contains each of the three elements necessary to state a claim for a Parity Act violation.  However, Blue Shield argues, in its third basis for dismissal, that such allegations are conclusory and thus insufficient to state a claim. Blue Shield takes particular exception to Plaintiffs' assertion that it "does not 'exclude or restrict coverage … based on medical necessity' for medical or surgical care in 'sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities,'" arguing that Plaintiffs "present no specific facts to support this allegation."  (ECF

No. 15 at 24–25 (quoting ECF No. 12 at ¶ 42)).  While the court acknowledges that Plaintiffs'

Second Amended Complaint does not cite specific examples of what limitations Blue Shield

applies to comparable sub-acute inpatient treatment settings such as skilled nursing facilities,

inpatient hospice care, and rehabilitation facilities, it also notes that Plaintiffs, at least twice,

requested "the Plan's mental health and substance abuse criteria [and] the Plan's skilled nursing

and rehabilitation facility criteria," and that those requests went unfilled.  (*See* ECF No. 12 at ¶¶

21, 28).[1]  Plaintiffs cannot be expected to plead facts that are in the sole possession of Blue

Shield, and they will not be punished for not offering those facts when their requests to learn the

same were ignored.

Facing a nearly identical situation, this court has determined that "[w]ithout knowing the

criteria [the insurer] relies on to evaluate the analogue to [plaintiff's child's] claim for coverage,

the Court cannot expect [plaintiff] to allege the nonquantitative treatment limitations [the insurer]

applied to those other services with specificity.  To require more would prevent any plaintiff

from bringing a mental health parity claim based on disparate operation unless she had suffered

the misfortune of having her admission to a skilled nursing facility for medical reasons approved

and her admission to a residential treatment facility denied and thus would have had personal

experience with both standards."  *Melissa P. v. Aetna Life Ins. Co.*, No. 2:18-cv-216, 2018 WL

6788521, at *3 (D. Utah Dec. 26, 2018).  The court agrees and refuses to penalize Plaintiffs for

---

[1]  Plaintiffs are entitled to this information under 29 C.F.R. § 2590.712(d) (2019), which states that the "criteria
for medical necessity determinations made under a group health plan with respect to mental health or substance use
disorder benefits (or health insurance coverage offered in connection with the plan with respect to such benefits)
must be made available by the plan administrator (or the health insurance issuer offering such coverage) to any
current or potential participant, beneficiary, or contracting provider upon request."  Moreover, under 29 C.F.R. §
2560.503-1, Plaintiffs are entitled to receive all plan documents that is "relevant" to L's claim.  A document is
"relevant" if it, among other things, "[w]as relied upon in making the benefit determination," "[d]emonstrates
compliance with the [required] administrative processes and safeguards . . . in making the benefit determination," or
[c]onstitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or
benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making
the benefit determination."  *See* 29 C.F.R. § 2560.503-1(m)(8).

not offering facts that are beyond their reach. As such, the court, as it must at this stage, accepts Plaintiffs' allegations as true and finds that Plaintiffs have stated a plausible claim that Blue Shield has violated the Parity Act. *See Emps.' Ret. Sys. of R.I.*, 889 F.3d at 1161.

## II.   The court cannot determine at this stage that Plaintiffs are not entitled to pursue the equitable relief sought through their Parity Act Claim.

Blue Shield next moves to dismiss Plaintiffs' Parity Act claim by targeting each request for relief that Plaintiffs make under that claim. Plaintiff, pursuant to 29 U.S.C. § 1132(a)(3), requests eight equitable remedies: 1) a declaration that Blue Shield's actions violate the Parity Act; 2) an injunction ordering Blue Shield to cease violating the Parity Act and requiring compliance with the statute; 3) reformation of the terms of the Plan and the medical necessity criteria utilized by Blue Shield; 4) disgorgement of funds obtained by Blue Shield as a result of their violations of the Parity Act; 5) an accounting Blue Shield of the funds wrongly withheld as a result of its violations of the Parity Act; 6) an order based on surcharge requiring Blue Shield to "provide payment to the Plaintiffs as make-whole relief for their loss; 7) an order estopping Blue Shield from denying Plaintiffs' claims in violation of the Parity Act; and 8) restitution for Plaintiffs' loss arising out of Blue Shield's violation of the Parity Act. (*See* ECF No. 12 at ¶ 49). Blue Shield attacks six of these requests as being improper "duplicative repackaging" of their first cause of action for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) (the "1132(a)(1)(B) Claim"). It attacks the remaining two requests for relief as being unavailable to Plaintiffs.

### A.   Plaintiffs' Parity Act Claim need not be dismissed because the relief it seeks is already available to Plaintiffs under their 1132(a)(1)(B) Claim.

Blue Shield argues that Plaintiffs requests for declaratory judgment (1), injunction (2), disgorgement (4), surcharge (6), estoppel (7), and restitution (8) each seeks identical relief that is available to Plaintiffs under their 1132(a)(1)(B) Claim, and that as such, they cannot be used to support Plaintiffs' Parity Act Claim. Blue Shield cites *Varity Corp. v. Howe*, 516 U.S. 489, 513–

15 (1996), in which the Supreme Court recognized that 29 U.S.C. § 1132(a)(3) "functions as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132(a)(1)] does not elsewhere adequately remedy," and that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate . . . ."  Blue Shield then cites to an unpublished Tenth Circuit opinion to show that the Tenth Circuit has specifically recognized that duplicative requests for relief are inappropriate.  *See Lefler v. United Healthcare of Utah, Inc.*, No. 01-4228, 72 Fed. App'x 818, 826 (10th Cir. 2003).  But *Varity Corp.* does not require the dismissal, at this stage, of duplicative requests for relief, and the *Lefler* case does not control here.

In *Varity Corp.*, the Supreme Court ruled that there will "likely be no need for further equitable *relief*" when a request for relief under 29 U.S.C. § 1132(a)(3) is already provided for by a claim asserted under 29 U.S.C. § 1132(a)(1).  *Varity Corp.*, 516 U.S. at 513.  But as recognized by the Second, Eighth, and Ninth Circuits, *Varity Corp.* only bars duplicative *recovery*; it does not require that alternative claims requesting similar relief be dismissed.  In *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) the Second Circuit noted that "it is important to distinguish between a cause of action and a remedy under § 502(a)(3)," recognized that "*Varity Corp.* did not eliminate a private *cause of action* for breach of fiduciary duty when another potential remedy is available," and ultimately concluded that because it was "is too early to tell if [the plaintiff's] claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B)," the district court had "prematurely dismissed [the plaintiff's] claims under § 502(a)(3) on the ground that § 502(a)(1)(B) provides [him] with adequate relief."  The Eighth Circuit similarly ruled that "[w]e do not read *Varity* . . . to stand for

the proposition that [the plaintiff] may only plead one cause of action to seek recovery of his

son's supplemental life insurance benefits" but instead concluded that the case prohibits

"duplicate *recoveries* when a more specific section of the statute, such as § 1132(a)(1)(B),

provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, §

1132(a)(3)."  *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (emphasis in

original).  The Ninth Circuit agreed with this approach, noting that it is "an accurate application .

. . because it allows plaintiffs to plead alternate theories of relief without obtaining double

recoveries."  *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), *as

amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016).

    The unpublished *Lefler* decision of the Tenth Circuit does not preclude the court from

adopting the logic and direction of these circuits.  *See* 10TH CIR. R. 32.1(A) ("Unpublished

decisions are not precedential, but may be cited for their persuasive value.").  Indeed, since

*Lefler* was decided, district courts in this circuit have not found it to require the dismissal of

simultaneously pursued claims for relief under § 1132(a)(1)(B) and § 1132(a)(3).  *See O'Dowd v.

Anthem Health Plans, Inc.*, No. 14-CV-2787-KLM, 2015 WL 5728814, at *4 (D. Colo. Sept. 30,

2015) (recognizing that "there does not appear to be recent binding case law discussing whether

a breach of fiduciary duty claim seeking a surcharge under § 1132(a)(3) may proceed when

another claim based on the same alleged facts is brought under § 1132(a)(1)(B)" and concluding

that "it is premature to dismiss the § 1132(a)(3) claim . . . at the motion-to-dismiss stage"); *see

also Galutza v. Hartford Life & Acc. Ins. Co.*, No. 05-CV-58-GKF-PJC, 2008 WL 2433837, at

*2 (N.D. Okla. June 12, 2008) (concluding that the plaintiff "ought to be permitted to join [his]

two claims [under § 1132(a)(1)(B) and § 1132(a)(3)] until such time as it may be determined

whether § 1132(a)(1)(B) affords him adequate relief").  Thus, even if the court assumes that the

relief Plaintiffs seek under their first, second, fourth, sixth, seventh, and eight requests for equitable relief are identical to that which they could potentially recover under their 1132(a)(1)(B) Claim, it is not required, under *Varity Corp.* or *Lefler*, to dismiss those requests for relief, and the Parity Act Claim under which they are asserted. Rather, the court finds that it is premature to dismiss as duplicative Plaintiffs' requests for relief under § 1132(a)(3) contained in their Parity Act Claim.

> **B. The court cannot, at this point, determine that Plaintiffs are not entitled to seek reformation, but limits its request for accounting to just money that was wrongfully withheld from them.**

Blue Shield next attacks Plaintiffs' two remaining requests for equitable relief, those for reformation (3) and an accounting (5), arguing that the reformation that Plaintiffs seek is not available to them under § 1132(a)(3) and that they lack standing to request an accounting of funds withheld from other Plan participants.

Plaintiffs' request for reformation seeks "[a]n order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by [Blue Shield] to interpret and apply the terms of the Plan to ensure compliance with [the Parity Act]." (ECF No. 12 at ¶ 49(c)). Under § 1132(a)(3), Plaintiffs are authorized to "to bring civil suits 'to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan.'" *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (quoting 29 U.S.C. § 1132(a)(3)). The Supreme Court has recognized that its "cases explain that the term 'equitable relief' in § 502(a)(3) is limited to 'those categories of relief that were typically available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Id.* (citations omitted). The Supreme Court has long recognized that "[t]he power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud." *CIGNA Corp. v. Amara*, 563 U.S.

421, 440 (2011) (citing *Baltzer v. Raleigh & Augusta R. Co.*, 115 U.S. 634, 645 (1885)).

Blue Shield argues that *Amara* involved a "very different setting that does not encompass the type of 'reformation' plaintiffs seek in this case."  (ECF No. 15 at 21).  While there are certainly differences in the type of reformation requested in *Amara* versus that which Plaintiffs request here, this difference does not make inapplicable to Plaintiffs' case the long-standing, nearly 150 year-old, principle reiterated by the *Amara* court—that a request for reformation of a contract is a relief that is typically available in equity.  Because reformation is an appropriate form of equitable relief, Plaintiffs are entitled to pursue it through their § 1132(a)(3) Parity Act Claim.  *See Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747–48 (2d Cir. 2019) ("Reformation is indisputably a typical and traditional form of equitable relief, and is thus categorically available to a participant or beneficiary to enforce violated provisions of ERISA." (citations omitted).

Blue Shield also argues that the reformation Plaintiffs seek "essentially ask[s] the Court to step into the role of a regulator or clinician and decide how clinical guidelines should be applied to specific mental health treatments" and that Plaintiffs have "not even attempt[ed] to articulate the form that this type of relief would take and instead apparently ask the Court to impose unspecified constraints on the medical judgment of Blue Shield medical reviewers."  (ECF No. 15 at 21).  The court finds that it is premature to dismiss a claim for relief on such grounds.  As discussed above, Plaintiffs have pled sufficient facts, at this stage, to state a plausible claim that Blue Shield has violated the Parity Act.  As an available remedy for that violation, Plaintiffs are entitled, pursuant to § 1132(a)(3) and years of Supreme Court precedent, to seek reformation of their Plan so that it conforms to the Parity Act.  It is improper for the court, on a motion to dismiss, to try to predict what shape that potential relief *may* take if it is indeed ultimately awarded and then dismiss a claim based on that prediction.

Finally, Plaintiffs seek "[a]n order requiring an accounting by [Blue Shield] of the funds wrongly withheld from participants and beneficiaries of the Plan and other [Blue Shield] insured plans as a result of [Blue Shield's] violations of [the Parity Act]."  (ECF No. 12 at ¶ 49(e)).  Blue Shield argues that this request should be dismissed because Plaintiffs lack standing to seek an accounting of money that was withheld from other participants and beneficiaries of the Plan.[2] (ECF No. 15 at 22).  Plaintiffs fail to respond to Blue Shield's arguments, and the court finds the same persuasive.  While Plaintiff may seek, pursuant to § 1132(a)(3), an accounting of moneys that were wrongfully withheld from them, they do not have standing to pursue, as a grounds of relief, an accounting of moneys that were withheld from others.  As such, Plaintiffs' request for an accounting must be limited to only the money that was arguably wrongfully withheld from them. This recognition should not be interpreted as a ruling as to the discoverability of such information.

## CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED**.

Dated this 30th day of July, 2020.

BY THE COURT:

Clark Waddoups
United States District Judge

---

[2] Blue Shield also argues that Plaintiffs are not entitled to an accounting as to "entirely different '[Blue Shield] insured plans' that have no stake in this litigation."  (ECF No. 15 at 22).  The limitation ordered herein, that Plaintiffs may only seek an accounting as to moneys that were withheld from them, moots this dispute.  If Plaintiffs did not have money withheld by the "entirely different Blue Shield insured plans," then they are not entitled to relief in the form of an accounting as to those plans.

13